The Honorable ROBERT J. BRYAN

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| JENNIFER DEGROSS and SHANE DEGROSS,<br><br>          Plaintiffs,<br><br>     v.<br><br>ROSS HUNTER, in his personal capacity and in his official capacity as Secretary of the Washington State Department of Children, Youth, and Families, NATALIE GREEN, in her official capacity as Assistant Secretary of Child Welfare Field Operations, RUBEN REEVES, in his official capacity as Assistant Secretary for Licensing, and JEANINE TACCHINI, in her official capacity as Senior Administrator of Foster Care Licensing,<br><br>          Defendants. | NO.  3:24-cv-05225-DGE<br><br>DEFENDANTS' REPLY RE: MOTION TO DISMISS |

DEFS' REPLY RE: MOTION TO DISMISS
NO.  3:24-cv-05225-DGE

1

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

## I. INTRODUCTION

The DeGrosses' response confirms that they lack standing and this suit is unripe. Based on both parties' evidence, it is undisputed that the DeGrosses never submitted an application for a foster parent license renewal, nor was an application ever submitted on their behalf. As such, the DeGrosses have not suffered any injury attributable to the Department, which has never had an opportunity to either consider their asserted desire to foster, or to make an informed decision regarding their licensure (including as to whether or how the DeGrosses' religious beliefs could be accommodated). The parties' actual evidence is at odds with many of the complaint's key allegations, including that the DeGrosses submitted an application that the Department "denied." The DeGrosses also appear to have abandoned their inaccurate, fearmongering assertions that the regulation at issue requires foster parents to participate in Pride parades unwillingly.

Unable to refute the Department's evidence, the DeGrosses try a new tack: they now claim that that the Department's regulation prevented them from even submitting an application for consideration, and that they requested an exemption from the Department. This new narrative differs materially from what is alleged in their complaint and is unsubstantiated by their evidence. A review of their evidence—emails between Olive Crest and the Department—evidences no preclusion of their application, and contains no indication that they ever sought an exemption from the regulation as they now claim. Rather, this evidence shows that, after some initial dialogue between the Department and Olive Crest, the Department asked how the DeGrosses would "support a child who identified as LGBTQ+ if [such] a child came into their home for respite?" Olive Crest did not answer this question or propose any potential solution. Instead, Olive Crest replied that "we cannot ensure that the family is following the WAC," ended the conversation on the subject, and then elected not to submit the DeGrosses' application—unprompted by the Department. As such, the Department—having been presented with no further information, including the proposed accommodations the DeGrosses suggest for the first

DEFS' REPLY RE: MOTION TO DISMISS
NO.  3:24-cv-05225-DGE

2

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

time in their response brief—had no opportunity or occasion to explore the issue further or make a decision itself.

This Court need not and should not adjudicate the DeGrosses' hypothetical dispute with the Department, which is based solely on their speculation about what the Department *might* do if it were given an opportunity to consider their application. This premature and needlessly incendiary lawsuit should be dismissed.

## II.    REPLY IN SUPPORT OF RULE 12(b)(1) MOTION TO DISMISS

**A.    The DeGrosses Have Neither Applied for a License Renewal Nor Requested an Exemption from the Department's Regulations**

Forced to acknowledge that no completed application for a foster care license was ever submitted to the Department by either the DeGrosses or Olive Crest, Dkt. No. 22 at 11-12, the DeGrosses change course and now assert a new, unpleaded, and equally unfounded theory: that they requested and were denied a "tailored exemption" from the Department's rule. *Id.* at 15. To be sure, the Department "may make exceptions" and may issue a license absent compliance with the minimum requirements "if [the Department finds] that you can provide for the safety, health and well-being of children in your care." Wash. Admin. Code (WAC) § 110-148-1630. But the DeGrosses—who, again, never submitted an application at all—never actually sought such an exemption.

Emails between Olive Crest and the Department, submitted by the DeGrosses, show that Olive Crest stopped well short of ever requesting any exemption on the DeGrosses' behalf. The emails show Olive Crest first explaining that the DeGrosses did not believe they could adhere to the WAC at issue, Dkt. No. 23 at 22, and the Department responding by asking how the DeGrosses would "support a child who identifies as LGBTQ+ if [such] a child came into their home for respite?" *Id.* at 21. Rather than answering the question or identifying any alternative

DEFS' REPLY RE: MOTION TO DISMISS
NO.  3:24-cv-05225-DGE

3

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

plan,[1] Olive Crest simply responded that it could not "ensure that the DeGrosses would follow the WAC." *Id.* at 20. There is no further dialogue with the Department shown by the DeGrosses' evidence, and the Department's unrefuted evidence shows that it was Olive Crest that later submitted a Termination of Foster Home License for the DeGrosses, Dkt. No. 14 at 4, without any prompt from the Department.

No exemption from the WAC was ever sought. The word "exemption" does not appear anywhere in these emails, and the DeGrosses fail to identify any language in the emails that could be construed as an exemption request. (Indeed, Olive Crest's ending its dialogue with the Department by asserting that it could not ensure the DeGrosses' compliance with the WAC is at odds with any suggestion that Olive Crest sought an exemption *from* the WAC.) Nor is there any evidence of an exemption or waiver form[2]—the standard means of requesting an exemption—being submitted to the Department. The DeGrosses' mere say-so that "Olive Crest requested a 'tailored exemption' from the Dept.," Dkt. No. 22 at 15, is not itself evidence, and is not substantiated by the evidence submitted. "The court need not presume the truthfulness of the plaintiff's allegations," and it is the plaintiff's burden to furnish evidence establishing the Court's jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) ("plaintiff[s] cannot simply rest on the bare allegations of [their] complaint"). Here, the DeGrosses have failed to meet their evidentiary burden to establish their standing. In the context of this factual attack, they cannot simply assert that they have requested an exemption, especially when their own evidence demonstrates otherwise.

---

[1] The DeGrosses now suggest that "the Department could place infants and toddlers with them or children who are themselves religious and share [the DeGrosses'] Christian beliefs." Dkt. No. 22 at 33. Having never previously been presented with these proposed accommodations, the Department has never had an opportunity to consider their merits or how they might be implemented in practice. The DeGrosses cannot claim to have been injured by the fact that they have not received accommodations they never asked the Department for. Their dispute with the Department is equally hypothetical and unripe under this version of their factual narrative.

[2] Such as the Form 15-411A or 15-411D the Department maintains at https://dcyf.wa.gov/forms.

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

4

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

B.  **The DeGrosses Lack Standing and Their Claims Are Unripe**

    1.  **The DeGrosses have not suffered a concrete injury**

To have standing to sue, the DeGrosses must have suffered an injury that is "concrete," or "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (internal quotation marks omitted). Having submitted no application for a license nor any exemption request, there is no real injury here: only an abstract question about what the Department might have done had it ever received either.

The DeGrosses lean heavily on *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020), to argue that they've met their burden here, but *Skyline* is readily distinguishable. In *Skyline*, the plaintiffs were found to have suffered an injury after losing access to insurance coverage consistent with their religious beliefs that excluded abortion coverage, even though those plaintiffs never attempted to utilize an available exception request process. *See id.* at 747. But in stark contrast to this case, in *Skyline* it was a government action—the issuance of a letter mandating changes to all covered insurance plans—that *caused* the loss of coverage. *Id.* at 742. Here, there has been no such government action, as the Department never received any application or exemption request that it could act on. The undisputed evidence shows that any failure to obtain a renewed license is attributable to the DeGrosses themselves, or to Olive Crest, because neither ever submitted an application or exemption request to the Department. Dkt. No. 14 at 4. Further, in *Skyline*, the insurance options that remained even after governmental remediation efforts were still incompatible with the plaintiffs' religious beliefs. *Skyline*, 968 F.3d at 742. Here, by contrast, the Department has had no opportunity to consider whether it is possible to accommodate the DeGrosses' religious beliefs, because Olive Crest declined to submit their application or to seek an exemption. *See* Dkt. No. 14 at 4.

The *Skyline* court acknowledged that "challenges to 'benefit-conferring rule[s]' should be dismissed as unripe when those rules have not yet been applied to make benefit decisions,"

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

5

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

finding dismissal appropriate when actions only *potentially* preclude the receipt of a benefit, and where a court accordingly cannot make a "firm prediction" that the benefit will be unavailable to the plaintiff. *Skyline*, 968 F.3d at 748. That is the situation here. *Skyline* does not require this Court to allow the DeGrosses' claims to proceed; it counsels the opposite.

### 2. The lapse of the DeGrosses' license is not traceable to the Department's promulgation of the regulation at issue

An additional requirement of standing, traceability, requires an injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations and ellipses omitted). In their response brief, the DeGrosses claim that the Department's promulgation of WAC § 110-148-1520(8) set off a chain of events that resulted in their license lapsing, thus satisfying this element of the standing inquiry. Dkt. No. 22 at 17-18. To the contrary, the evidence shows that it was the DeGrosses—and their licensing partner, Olive Crest—who caused this purported injury by failing to apply for a new license before their old one expired. *Supra* at 3-4. These are "independent action[s] of some third party not before the court," *Lujan,* 504 U.S. at 560, and the DeGrosses' own failure to act, and thus break any chain of causation that might exist between the Department's rulemaking and the lapsing of the DeGrosses' license. Without such traceability, the DeGrosses lack standing to sue. *See Spokeo, Inc.*, 578 U.S. at 338.

### 3. The DeGrosses' hypothetical grievances are not redressable

As discussed above, the DeGrosses' new insistence that they applied for and were denied an exemption from the WAC has no basis in the pleadings or the evidence. The Department never received or had an opportunity to consider or act upon any exemption request. *Supra* at 3-4. To the extent the DeGrosses are now asking this Court to force the Department to exempt or accommodate them, *see* Dkt. No. 22 at 33, the Court is ill-equipped to do so absent the record of agency decision making that would normally be the basis for a challenge to an

DEFS' REPLY RE: MOTION TO DISMISS
NO.  3:24-cv-05225-DGE

6

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

agency action. If the DeGrosses wish to seek an exemption from the WAC in connection with a license application, they should seek it from the Department before demanding redress from a court. *See* WAC § 110-148-1630; *Allen v. Grand Central Aircraft Co.*, 347 U.S. 535, 553 (1954) (judicial action is generally premature until administrative remedies are exhausted); WAC § 110-148-1645 (allowing appeal of licensing decisions).

In response to the argument that their grievances are not judicially redressable, the DeGrosses point out that they "are asking for an order enjoining the Department from enforcing § 1520 to categorically disqualify them and similarly situated applicants at the door." Dkt. No. 22 at 19 (citing their complaint). But, as explained above, WAC § 110-148-1520 is not a "categorical bar" to licensing—the exemption process established at WAC § 110-148-1630 disproves that. While the Department agrees that an administrative appeal makes little sense, that is because the DeGrosses have not actually applied for such a license, leaving nothing to administratively adjudicate (just as there is nothing to judicially adjudicate). The DeGrosses should at least have to apply for a license, or seek exemption from the rule they sue to undo, before they can claim actual injury and standing here.

### 4. The DeGrosses' claims are unripe

The "basic rationale" of the requirement that a Plaintiff's claims are "ripe" before they can have standing to sue is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (citation omitted). Here, because the DeGrosses have never applied for a license renewal, their claim that they were "denied" a license is not yet ripe for judicial review. Dkt. No. 13 at 13. The DeGrosses respond by arguing that no such action on an application or exemption request is required, and that the mere creation of the rule they disagree with is enough for their claims to be ripe. Dkt. No. 22 at 21. This is mistaken, as illustrated by the very cases on which the DeGrosses rely.

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

7

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA 98504-0141
(360) 709-4845

First of all, to the extent that standing and ripeness are two sides of the same coin, Dkt. No. 22 at 20; *Skyline*, 968 F.3d at 747, the DeGrosses' claims are unripe for the same reasons they lack standing to sue. *Supra* at 5-7. Next, the DeGrosses' reliance on *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012), is misplaced. That case is inapposite because it involved actual enforcement action by the government—in stark contrast to the lack of any Department action whatsoever with respect to the DeGrosses here. *See id.* at 836 ("Plaintiffs need not allege a threat of future prosecution *because the statute has already been enforced against them*. When the Government seized Plaintiffs' marijuana pursuant to the CSA, a definite and concrete dispute… came into existence.")(emphasis added).

The DeGrosses also rely heavily on *Blais v. Hunter*, 493 F. Supp. 3d 984 (E.D. Wash. 2020), but that case only underscores that the DeGrosses' claims here are unripe. The injunction issued in that matter, which still binds the Department, provides that the Department <u>may</u> "tak[e] LGBTQ+ considerations into account when reviewing foster care license applications," though the applicant's views on "LGBTQ+ hypotheticals cannot serve as the sole determining factor when an applicant expresses sincerely held religious beliefs." *Id.* at 1002. The DeGrosses' own evidence shows, at best, that this *Blais*-sanctioned evaluation process *began*, but that Olive Crest declined to pursue it. Again, the evidence shows that Olive Crest explained to the Department that a potential applicant's religious views conflict with the WAC; the Department asked how the DeGrosses would support a child identifying as LGBTQ+ should one come into their care; and rather than continuing to engage in the dialogue, Olive Crest submitted a Termination of Foster Home License for the DeGrosses. Dkt. No. 23 at 20-21. While the DeGrosses unfairly mischaracterize the Department's question as an "affirm[ation]" that the DeGrosses should not apply, Dkt. No. 22 at 17, this was not the "reject[ion]" that the DeGrosses insist it was. *Id.* To the contrary, the Department's questions are condoned by *Blais*, 493 F. Supp. 3d at 1002, and are exactly what is to be expected of the Department if it is to holistically evaluate candidates as contemplated by *Blais*. But, again, the Department never had the

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

8

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

opportunity to conduct a holistic evaluation because Olive Crest ceased engagement, declined to seek an exception to the rule under WAC 110-148-1630, and then on its own initiative acted to terminate the DeGrosses' license. Dkt. No. 14 at 4. All that's left for this Court to evaluate are hypotheticals about what the Department *might* have done, consistent with its obligations under *Blais*, if it ever received an application or exemption request to evaluate.

The DeGrosses' lawsuit is an attempt to end-run the administrative process involving holistic consideration of an application contemplated by *Blais*. Their pure speculation about the alleged futility of an application the Department never received, and a request for an exemption they never made, does not transform this into a ripe dispute. Dkt. 22 at 16. Such a contention, if accepted, would turn Article III on its ear. *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838-39 (9th Cir. 2014) (where the court can only speculate as to the specific activities in which the party seeks to engage, it must dismiss the claim as nonjusticiable). Whether viewed through the lens of standing or ripeness, this case fails at the threshold and should be dismissed. No further jurisdictional discovery is necessary or appropriate where the DeGrosses' evidence submitted alongside their response adequately apprises the Court of what's transpired, and what has yet to transpire.

### III.     REPLY IN SUPPORT OF 12(b)(6) MOTION TO DISMISS

**A.     Plaintiffs Have Not Alleged Personal Participation by Secretary Hunter and Sovereign Immunity Bars Claims Against Him in his Personal Capacity**

Plaintiffs' claims against Secretary Hunter in his personal capacity should be dismissed because the Complaint fails to plead specific facts showing his causal role in the harms alleged by Plaintiffs. Dkt. No. 13 at 14 (citing, *inter alia*, *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). Plaintiffs rely on *OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012), to argue that they need not allege how Secretary Hunter was personally involved, but instead that "a plausible inference" that Secretary

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

9

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

Hunter was responsible for the WAC at issue here is enough for their claims against him personally to proceed.

In *OSU Student Alliance*, a "plausible inference" of a supervisor's personal involvement was drawn where the supervisor personally denied the plaintiffs' petition; contacted them to explain the policy at issue; and spoke to them on behalf of the university as to that policy. *OSU Student Alliance*, 699 F.3d at 1077. Based on these facts, the supervisor was found to have "personally applied [a] policy against [those] plaintiffs." *Id.* at 1070. By contrast, here, Plaintiffs' claims against Secretary Hunter rest almost entirely on their "information and belief" that Secretary Hunter approved the rule they challenge. Dkt. No. 1 at 25. Plaintiffs do not allege that Secretary Hunter personally played any role in applying that rule to them, nor do they allege that he otherwise personally involved himself in their exploration of submitting an application. This is a far cry from the level of interaction between the parties in *OSU Student Alliance*; these sparse allegations are insufficient to state any claim against Secretary Hunter personally.

Without pleading the requisite personal participation of Secretary Hunter, what's left is a challenge to the rule itself. This is functionally the same as "a claim against the State that is protected by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The claims against Secretary Hunter personally should be dismissed because Plaintiffs have failed to allege any meaningful personal participation by him.

**B.    Plaintiffs' Claims for Damages Against Secretary Hunter Are Also Barred by Qualified Immunity**

In an attempt to overcome qualified immunity, Plaintiffs invoke *Blais* to argue that Secretary Hunter had received "fair warning" that the Department could not rely on an applicant's sincerely held religious beliefs regarding LGBTQ+ issues to disqualify them from licensure. Dkt. No. 22 at 29. Taken in good faith and at its best, this argument acknowledges only half of what was ordered in *Blais*. The *Blais* Court's injunction expressly allows the Department to "tak[e] LGBTQ+ considerations into account when reviewing foster care license

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

10

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

applications," though the applicant's views on "LGBTQ+ hypotheticals cannot serve as the sole determining factor when an applicant expresses sincerely held religious beliefs." *Blais*, 493 F. Supp. 3d at 1002. It is perfectly consistent with *Blais* to ask foster license applicants how they would support the well-being of children in their care without being willing to use their preferred pronouns. And the Department hasn't come close to disqualifying the DeGrosses from fostering: as the Degrosses now admit, they have not applied to renew their foster license. As such, the exemption process remains a possibility for them. Any relevant actions by Secretary Hunter were therefore consistent with applicable law, including *Blais*—and certainly far from being "clearly unconstitutional," as would be required to overcome qualified immunity.[3] As such, Secretary Hunter is immune from any claims for damages.

## C. Plaintiffs Fail to State an Equal Protection Claim

As Plaintiffs acknowledge, equal protection claims require a showing of an intent to discriminate against them because of their membership in a protected class. Dkt. No. 22 at 31 (citing *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013)). Here, Plaintiffs have failed to plead such discriminatory intent, warranting dismissal under Rule 12(b)(6).

Once again, *Blais* is more helpful to the Department than to Plaintiffs because it found, as to the Department's prior policy:

> [t]he Department ostensibly did not intend to infringe or restrict any particular religious beliefs or conduct *because of* their religious motivations. Rather, the Department intended that regulation, and others like it, to protect the best interests of children in foster care. There is also no evidence the Department promulgated these regulations with discriminatory intent.

*Blais,* 493 F. Supp. 3d at 995-96 (citation omitted).

---

[3] Plaintiffs' cited cases—*303 Creative*, *Janus*, and *Meriweather*—are inapposite because they dealt with compelled speech. Dkt. No. 22 at 30-31. Here, by contrast, Plaintiffs are not compelled by the Department to do or say anything—indeed, they are not subject to any conditions of licensure at all—because they never applied for a license, nor has any determination been made (or sought) regarding a potential exemption from the challenged regulation.

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

11

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

The same is true as to the Department's current policy. Plaintiffs have not alleged any facts indicative of discriminatory intent, but make only unfounded and conclusory assertions that the Department was acting to discriminate against religion, rather than in the best interests of the children in its care. Such conclusory assertions are not enough for their equal protection claims to survive. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiffs must offer more than conclusory allegations and "naked assertions" to survive a motion under 12(b)(6)).

It is unsurprising that Plaintiffs have failed to plead a plausible claim of religious discrimination, because a core purpose of the very regulations they challenge is to *protect* the religious beliefs of foster children. *See* WAC § 110-148-1520(8) ("You must support a child's religion or spiritual practices by providing adequate opportunities for religious or spiritual training and allowing a child meaningful participation appropriate to the child's spiritual beliefs. You may not require any child to participate in practices against their beliefs."); *see also* WAC § 110-148-1625(1)(h) (Department may revoke licensure if foster parents do not support a child's cultural needs including needs based on the child's religion); *see also* WAC § 110-148-1395(1) (a foster care provider may not reject a child because of their actual or perceived religious beliefs). Foster parents are of course entitled to their own beliefs, but it is the Department's solemn responsibility to protect the interests and well-being of the foster children entrusted to its care. Its licensing regulations further that responsibility.

Plaintiffs attempt to cure these shortcomings by suggesting the Court should blur First Amendment free speech and Equal Protection jurisprudence here. Dkt. No. 22 at 31. But these are distinct claims, with distinct pleading requirements. Whatever the Court makes of Plaintiffs' standing or First Amendment claims, it should dismiss Plaintiffs' Equal Protection claims because Plaintiffs have not alleged facts that, if true, would demonstrate that the DeGrosses were targeted "because of" their religious beliefs. *See Navarro v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1995) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979));

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

12

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

*see also FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991) (plaintiff must produce evidence establishing that defendant was motivated by animus against protected trait).

**D.   Plaintiffs' Facial Challenge to § 1520 Should Be Dismissed Because They Cannot Demonstrate Its Unconstitutionality in All Circumstances**

The nature of the DeGrosses' grievances as to WAC § 110-148-1520 belie their argument that §1520 is unconstitutionally overbroad in all of its applications. Plaintiffs bemoan the WACs directive to foster patents to support a child's SOGIE, but SOGIE relates to an identity that all children have, not just gender non-conforming children. Further, the DeGrosses seek to rigidly define what it means to "support" a child's SOGIE under the regulations, Dkt. No. 22 at 33, but their interpretation is crabbed. Indeed, their own evidence demonstrates that the Department is willing to have at least some flexibility in how a youth's identity may be supported. *See* Dkt. No. 23 at 15 (the Department explains to potential licensors and applicants that "there is not a specific definition for 'supporting' and 'engaging' " and offers *examples* for how this could be achieved, before inviting collaboration to work through potential conflict). The DeGrosses haven't demonstrated any overbreadth as to the WAC, especially where they do not appear to take issue with many of the regulation's components. Their allegations therefore are not adequate to support their conclusion that the law is overbroad in every application, and their facial challenge to the regulation should therefore be dismissed.

### IV.   CONCLUSION

Defendants respectfully request that the Court dismiss the DeGrosses' claims against them, in their entirety, for lack of subject-matter jurisdiction. In the alternative, Defendants request dismissal of the DeGrosses' inadequately pleaded claims under Rule 12(b)(6).

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

13

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845

I certify that this memorandum contains 4,193 words, in compliance with the Local Civil Rules.

RESPECTFULLY SUBMITTED this 24th day of June 2024.

ROBERT W. FERGUSON
Attorney General

By: *s/Marko Pavela*
MARKO PAVELA, WSBA No. 49160
MADELINE EBEL, WSBA No. 56980
JENNIFER R. HERNANDEZ, WSBA No. 36131
Assistant Attorneys General
DANIEL JUDGE, WSBA No. 17392
CARISSA A. GREENBERG, WSBA No. 41820
Senior Counsel
Attorneys for Defendants

Office of the Attorney General
PO Box 40141
7141 Cleanwater Drive SW
Olympia, WA  98504-0141
Telephone:   (360) 586-6540
Fax:   (360) 586-6662
Email:   Marko.Pavela@atg.wa.gov
Maddie.Ebel@atg.wa.gov
Jennifer.Hernandez@atg.wa.gov
Daniel.Judge@atg.wa.gov
Carissa.Greenberg@atg.wa.gov

DEFS' REPLY RE: MOTION TO DISMISS
NO. 3:24-cv-05225-DGE

14

ATTORNEY GENERAL OF WASHINGTON
Children, Youth and Families Division
7141 Cleanwater Drive SW
PO Box 40141
Olympia, WA  98504-0141
(360) 709-4845