UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JENNIFER DEGROSS and SHANE DEGROSS,

Plaintiffs,

v.

ROSS HUNTER, in his personal and in his official capacity as Secretary of the Washington State Department of Child, Youth and Families, NATALIE GREEN, in her official capacity as Assistant Secretary of Child Welfare Field Operations, RUBEN REEVES, in his official capacity as Assistant Secretary for Licensing and JEANINE TACCHIHI, in her official capacity as Senior Administrator of Foster Care Licensing,

Defendants.

CASE NO. 24-5225 DGE-RJB

ORDER DENYING, WITHOUT PREJUDICE, DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on the Defendants' Motion to Dismiss. Dkt. 13. The Court has considered the pleadings filed regarding the motion and the remaining file. It is fully advised.

## I.   FACTS AND PENDING MOTION

The DeGrosses' Complaint alleges that the Defendants, all Washington State Department of Child, Youth and Families employees ("Department" or "State"), violated their Constitutional rights regarding religion and equal protection when their application to renew their expired foster care license was denied because of the DeGrosses' refusal to comply with portions of Wash. Admin. Code ("WAC") § 110-148-1520 ("§ 1520"). Dkt. 1. In part, § 1520 includes requirements that foster parents "support a foster child's [sexual orientation, gender identity, and expression ("SOGIE")] by using their pronouns and chosen name" and "connect a foster child with resources that supports and affirms their needs regarding race, religion, culture, and SOGIE . . ." WAC § 110-148-1520 (9) and (7). The DeGrosses assert that they believe that "a person's biological sex is an immutable characteristic, given by God that cannot be changed." Dkt. 1 at 29. They maintain that they are unwilling to "use a child's preferred pronouns that are contrary to their biological gender as it violates [their] religious beliefs." *Id.* at 31. Further, they contend that they are "not willing to say that a child who is a biological male can identify as female or a child who is a biological female can identify as a male as it violates [their] religious beliefs." *Id.*

The State now moves for dismissal of this case, arguing, in part, that this Court does not have subject matter jurisdiction because the DeGrosses cannot survive a Fed. R. Civ. P. 12(b)(1) factual attack on their Article III standing and ripeness. Dkt. 13. The State contends that there is no live controversy here because the DeGrosses never applied for a foster care license renewal or for an exception to § 1520. *Id.* The State asserts that while the DeGrosses allege that they sought to renew their license through a private licensing agency called Olive Crest, the State has never received or acted on such a renewal application. *Id.* Olive Crest is not a party in this case.

The Defendants also include a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the Plaintiffs have also failed to state a claim upon which relief can be granted. *Id.*

The issues raised in the Fed. R. Civ. P. 12(b)(1) portion of the motion, whether the Court has subject matter jurisdiction, should be resolved before consideration of the Defendants' Fed. R. Civ. P. 12(b)(6) portion of the motion. Accordingly, the Fed. R. Civ. P. 12(b)(6) motion (Dkt. 13) should be denied, without prejudice, to be renewed, if appropriate, after the issues relating to jurisdiction are resolved.

## II. DISCUSSION

### A. FED. R. CIV. P. 12(b)(1) STANDARD ON MOTION TO DISMISS

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D. Wash. 1986); *see e.g.* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant).

Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in two separate ways. *Leite v. Crane Co*., 749 F.3d 1117, 1121 (9th Cir. 2014). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* A facial attack is resolved like a "motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable

inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

A "factual" attack contests the truth of the plaintiff's factual allegations, typically by introducing evidence outside the pleadings, as has been done here. *Id.* "When the defendant raises a factual attack, the plaintiff must support their jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context." *Id.* (*internal quotation marks and citations omitted*).

A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West* at 1225. "If the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Leite* at 1121–22.

**B. FACTUAL ATTACK ON THE DEGROSSES' ART. III STANDING AND RIPENESS**

To demonstrate standing under Article III of the Constitution, a plaintiff must show that (a) they suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent;" (b) the injury was "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court" and (c) it must be "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)(*cleaned up*). "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong

of the standing inquiry," *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022), and so the State's arguments regarding ripeness will be considered within the standing analysis.

In support of its argument that this case should be dismissed because there is no case or controversy (that the Plaintiffs lack standing), the State offers the Declaration of Defendant Jeanine Tacchini, the Department's Foster Care Senior Administrator of the Licensing Division. Dkt. 14. Ms. Tacchini states that people can apply to become foster parents either directly with the Department or can work with a Child Placing Agency licensor who will submit the application form and packet on the potential foster parents' behalf. *Id.* at 2. If a Child Placing Agency submits an application and packet on behalf of a foster parent, that agency "certifies that the foster parent meets the minimum licensing requirements as set forth in WAC 110-148." *Id.* A Child Placing Agency has the discretion to determine whether a potential foster parent meets the minimum licensing requirements and can terminate a certification for several reasons. *Id.* at 2-3. According to Ms. Tacchini, if a Child Placing Agency decides to terminate a certification, the agency notifies the Department, and the Department closes the license. *Id.* at 3. The potential foster parent can reapply with a different Child Placing Agency or directly with the Department. *Id.*

Ms. Tacchini further states that she reviewed the Department's data base. Dkt. 14 at 3-4. She states that the Department did not receive a completed application or requested exemption for the DeGrosses to renew their license from Olive Crest, the Child Placing Agency that the DeGrosses allege that they used. *Id.* Ms. Tacchini acknowledged that Olive Crest sent "an initial application form and authorizations," but the packet was not completed. *Id.*

In support of their opposition to the motion to dismiss for lack of standing, the DeGrosses offer the Declaration of Jeff Clare, the Regional Program Director for Olive Crest. Dkt. 23. Mr.

Clare states that Olive Crest has institutional religious beliefs based on Judeo-Christian principles. *Id.* at 2. He contends that Olive Crest did not submit a complete re-licensing application for the DeGrosses "based on interactions with [Department] representatives where Olive Crest was led to believe that it could not certify a family that did not agree to uphold all of the licensing requirements for foster homes including WAC 110-148-1520." *Id.* at 3. He points to general interactions and to an email exchange about the DeGrosses with a response from a Department employee dated October 7, 2022 at 11:48 a.m. *Id.* at 4. That Department response provided:

> Based on the information provided below, how would [Olive Crest] ensure that the family is following the WAC when they clearly stated that using a child's pronouns is something the family cannot do? How would they support a child who identifies as LGBTQ+ if a child came into their home for respite?

*Id.* at 21. Olive Crest responded:

> While we would not plan to place a child in their home for respite that identifies as LGBTQ, you are correct in assessing that we cannot ensure that the family is following the WAC. I am disappointed to lose a family who has been licensed for 9 years and thus, wanted to bring this to your attention to see if there was any way for them to remain licensed with Washington State, given their stance. Thank you for your time.

*Id.* Nothing further is in the record.

In addition to opposing the motion, the Plaintiffs request an opportunity to do jurisdictional discovery. Dkt. 22 at 23.

"Jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023).

In reviewing the pending motion, the Court notes that the DeGrosses' assertions of Constitutional violations are being bogged down in what are essentially procedural matters,

although they are important ones and relate to this Court's Constitutional power to adjudicate the case. The DeGrosses' factual showing on standing and ripeness is cloudy at best. At a minimum, a "more satisfactory showing of the facts is necessary," *Yamashita* at 507, if such facts exist. The parties should be granted additional time to conduct jurisdictional discovery.

Such discovery should be limited to three months. It should focus on what happened to the DeGrosses **only** and not stray into general Department policy on § 1520. Parties may want to concentrate on what was communicated about the DeGrosses to and by whom for the state, and to and by whom for Olive Crest. They may want to explore who, if anyone, spoke for the Department and who, if anyone, spoke for Olive Crest. Parties may want to investigate what authority, if any, there was to bind the Department in the DeGrosses' case. They also may want to explore what was communicated to the DeGrosses. While Olive Crest is not a party in this lawsuit, it appeared to have played a critical role. More information about this role may be of interest.

The State's Fed. R. Civ. P. 12(b)(1) motion to dismiss (Dkt. 13) should be denied without prejudice, to be renoted, if appropriate after the above limited jurisdictional discovery is complete.

## III. ORDER

It is **ORDERED** that:

- The DeGrosses' motion for leave to conduct jurisdictional discovery (Dkt. 22) **IS GRANTED**;
    - Such discovery may be done by both parties, is limited to three months, and is limited to what happened to the DeGrosses; it is not to stray into the Department's general policy on § 1520; and

- The Defendants' Motion to Dismiss (Dkt. 13) **IS DENIED WITHOUT PREJUDICE**, to be refiled or withdrawn, as appropriate, after the limited jurisdictional discovery is complete.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 8th day of July, 2024.

ROBERT J. BRYAN
United States District Judge